IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEREMY BARTER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 10-248-DRH-PMF |
| | ) |
| THE AMERICAN COAL COMPANY, | ) |
| | ) |
|     Defendant. | ) |

### DEFENDANT'S OBJECTION TO, OR APPEAL FROM, MAGISTRATE'S ORDER OF NOVEMBER 12, 2010

#### Introduction

Defendant, The American Coal Company ("AmCoal"), files this Objection, or alternatively, makes this appeal from, U.S. Magistrate Philip Frazier's discovery-related Order of November 12, 2010 [see Exhibit A attached hereto].

F.R.C.P. 72(a) permits an objection to be made to the District Judge regarding a non-dispositive matter heard and decided by a Magistrate Judge. In addition, Local Rule 73.1 allows for an appeal of a Magistrate's Order determining a motion or matter.

#### Additional Applicable Rules and Procedures

F.R.C.P. 37(a)(1) provides that a party may move for an order compelling discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to make discovery in an effort to obtain it without court action. Local Rule 7.1(c) and (g) allow the other party an opportunity to respond to such a motion and, indeed, the Court may treat a failure to file a response to a motion as an admission of the merits to the motion. Local Rule 26.1(b)(3) provides for other procedures in connection with a discovery motion.

It seems that a theme of these Federal and Local Rules is the opportunity to be heard. In the undersigned's years of experience before this Court, he has always had the opportunity to be heard, even when it turned out that he was wrong.

In this case, no such discovery-related motion was filed, so that AmCoal was not in a position to file a written, explanatory response.

## The Discovery Dispute

This is a retaliatory discharge suit. Plaintiff alleges that plaintiff was laid off from and not recalled to his employment with AmCoal, and that the layoff and refusal to recall amounted to a termination, which was done in retaliation for his pursuit of an Illinois workers' compensation claim. [See Complaint, Exhibit B] The discovery dispute concerned AmCoal's responses to plaintiff's Interrogatories 6 and 7. Since these Interrogatories flow from plaintiff's Interrogatory 5 (and because the response to Interrogatory 5 also subsequently has become pertinent to the dispute), plaintiff's Interrogatories 5, 6 and 7 and AmCoal's responses and objections to same, are set forth below verbatim, as required by Rules:

> 5.  List the name, address and telephone number of each employee of defendant who has filed a worker's compensation claim in the last five (5) years.
>
> **RESPONSE:** Defendant objects to this Interrogatory as being vague, overly broad, unduly burdensome and seeks information neither relevant nor material nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the objection, TACC attaches a listing of employees who reported an on-the-job accident for the years 2003 through 2007, Bates #Barter 00001 – Barter 00053.
>
> 6.  For each such person listed in response to Interrogatory No. 5, state their current employment status, and if no longer employed, state the date of separation and the reason for separation, that is whether the separation was by retirement, voluntary separation, lay-off or termination.

> **RESPONSE:** Defendant objects to this Interrogatory as being vague, overly broad, unduly burdensome, and seeks information neither relevant nor material nor reasonably calculated to lead to the discovery of admissible evidence.
>
> 7.     For each such separation described in answer to Interrogatory No. 5, state whether the separation, resignation and/or retirement was a settlement term of that employee's compensation claim.
>
> **RESPONSE:** Defendant objects to this Interrogatory as being vague, overly broad, unduly burdensome, and seeks information neither relevant nor material nor reasonably calculated to lead to the discovery of admissible evidence.

After receiving the Interrogatory responses, plaintiff's attorney took exception to AmCoal's objection to Interrogatories 6 and 7. The attorneys for the parties had subsequent conversations regarding that discovery dispute, and the undersigned advised that he, working with his client, was trying to figure out a compromise response to Interrogatory 6. However, with respect to Interrogatory 7, it was the undersigned's position that, in addition to those other stated grounds for objection, he could not see how the information requested was reasonably calculated to lead to the discovery of admissible evidence. He was advised that he was obliged to stand on the objection unless plaintiff's attorney could justify the discoverability of the requested information as it related to this lawsuit. Plaintiff's attorney has never provided such an explanation, even when the subject came up again as recently as last Friday, November 19, 2010.

In any event, plaintiff's attorney continued to press for responses to Interrogatories 6 and 7. In communications shortly before the undersigned left for a vacation in early November, plaintiff's attorney advised that he would schedule an informal conference with U.S. Magistrate Frazier. While the undersigned was on vacation, his office received plaintiff's attorney's letter of November 8, 2010 to Judge Frazier [Exhibit C attached] which confirmed the conference call

3

#44620

for November 12, 2010, furnished Judge Frazier with Interrogatories 5, 6 and 7 and AmCoal's responses and objections to same. Plaintiff's counsel's letter further stated:

> "I have included Interrogatory 5 for context. Mr. Schmitt and I have attempted to resolve the discovery dispute regarding Interrogatories 6 and 7, but we have been unsuccessful."

At the conference call itself, Judge Frazier indicated at the outset that the objections to Interrogatories 6 and 7 would be denied. When the undersigned asked for the opportunity to provide and explain his position, the Court declined to hear it, stating that the Interrogatories were stock Interrogatories in a retaliatory discharge case, so that he did not need any explanation or other response from the undersigned. The Court further indicated that an Order would be entered requiring responses to Interrogatories 6 and 7 within 10 days.[1]

### Argument and Explanation

The Federal Rules of Civil Procedure, and the corresponding Local Rules, provide for motions to compel with respect to discovery, and such Rules appropriately grant an opposing party the right to make such a response and explanation as may be appropriate, in order to guide the Court. However, those procedures were not utilized in this case. Plaintiff did not file a formal motion to compel, so that this defendant was not in a position to file a written response and argument in support of its objections.

Instead, plaintiff elected to take advantage of an informal conference regarding Discovery Disputes as provided on Magistrate Judge Frazier's web page on this Court's formal Website. According to that web page, "Motions to compel discovery are handled telephonically and without motions or briefs, and also that Judge Frazier 'will normally rule on the dispute during

---

[1] When the undersigned indicated that he would have to consult with his client to see whether an appeal would be taken from the Magistrate's Order, Judge Frazier indicated that if such an appeal was taken, he would request Judge Herndon to order attorneys' fees to be paid. In the proper representation of his client, the undersigned was obliged to file this appeal in good faith, and take the chance that this Court will not award such attorneys' fees.

4

#44620

the teleconference.'"  In other words, this informal discovery dispute process bypasses the formal motion process provided by the Federal Rules of Civil Procedure and this Court's Local Rules.  The web page also states that "Letters from counsel containing arguments are neither helpful nor desired."  Nevertheless, the undersigned assumed that the purpose of this informal telephone conference would include an opportunity for the parties to at least orally present their position and explanation.  Since the undersigned was not given that opportunity by way of formal written response, or even oral response, AmCoal needs to provide that explanation here:

Although plaintiff's attorney did not take exception to the response to Interrogatory 5, either before or at the discovery teleconference itself, explanation of AmCoal's response and objection to Interrogatory 5 must be provided here, because Interrogatories 6 and 7 are premised on the response to Interrogatory 5 (and because, as further explained below, an issue has now subsequently arisen with respect to Interrogatory 5).

Interrogatory 5 asks for the identity (as well as addresses and phone numbers) for each employee of AmCoal who had filed a workers' compensation claim in the last five years.  In addition to the overbreadth of the scope of the Interrogatory seeking information over a period of five years, there was at least some inherent vagueness in the reference to workers' compensation "claim," because it is unclear whether it was referring to actual Applications for Adjustments of Claim filed with the Industrial Commission, or some other "claim" asserted preliminary to such an Application being filed with the Commission.  However, the more important objection, and which is the focus here, was the burdensome nature of responding to this Interrogatory.  AmCoal does not maintain a computer-stored or electronic record of workers' compensation claims filed, nor does its insurer.  To get that information, AmCoal would be obliged to manually search many boxes of old workers' compensation files.  In addition, when the claims are closed, they

5

are not stored chronologically by the date the claims were filed, but are stored as they are closed, which compounds the extent of the search which must be made. However, AmCoal does maintain an electronically stored record of on-the-job reported accidents. Therefore, and notwithstanding the objection to Interrogatory 5, AmCoal provided that list of the persons reporting on-the-job accidents for the years 2003 through 2007 [see Exhibit D, Bates #Barter 00001 – Barter 00053 which are attached hereto in identical form as furnished to plaintiff in response to Interrogatory 5]. The document consists of approximately 53 pages, with each page containing approximately 40 names of such employees who reported an on-the-job accident for the years 2003 through 2007. AmCoal provided the information for 2003-2007, rather than the "last five years" as requested in the Interrogatory, because plaintiff's layoff occurred in 2007, so that information subsequent to his layoff seemed to lack the relevance standard required for discovery.[2]

For each such person then listed in response to Interrogatory 5, Interrogatory 6 seeks each of those individual's current employment status and, if no longer employed, their date of separation and reason for separation. However, that information is not contained in the workers' compensation files or in the Workers' Compensation Department. Instead, that information would be located in each such individual's personnel records in the Human Resources Department, thus requiring yet another manual search of the files of each of the persons identified on the 53 page list of persons who reported an on-the-job accident. Countless hours would be required for this task, and AmCoal lacks the manpower to devote exclusively to the project, and it would either require some considerable time to complete, or the time might be shortened by the hiring of additional manpower.

---

[2] Obviously, the number of employees who actually filed a claim with the Industrial Commission is far less than those employees who reported on-the-job accidents.

With respect to Interrogatory 7, and for each such employment separation identified in answer to Interrogatory 5 (sic)[3], AmCoal was to state whether that employment separation was a settlement term of that employee's compensation claim. Again, AmCoal objected to the relevance of the subject matter of this Interrogatory, without explanation from plaintiff's attorney as to its such relevance. However, even more important than that, AmCoal was presented with the very same burden problems with respect to Interrogatory 7, as it was with respect to the previous Interrogatories. It was believed that a manual search would have to be made of individual workers' compensation files and/or personnel files to be in a position to respond to that Interrogatory.

Even if AmCoal set out to conduct all of this manual searching of individual files, it would have been impossible to accomplish it within the 10 days provided by the Magistrate's Order. Admittedly, Judge Frazier did not have the benefit of this explanation, because he declined to hear it.

Since Magistrate Frazier's Order of November 12, 2010, AmCoal and the undersigned attorney have devoted efforts to determine if some electronic means could be developed to search for and provide the information requested in Interrogatories 6 and 7. As a result of these efforts, which included reformatting of certain electronically-stored information, including a listing of all terminated employees since 2003 through 2007, AmCoal, or its attorneys' staff, should be in a position to type in the name of each person on that list of all persons who reported an on-the-job accident, and cross reference to determine whether that individual's employment has been terminated, the date of termination and the reason the individual's employment

---

[3] Plaintiff's attorney presumably intended to state Interrogatory 6, and not Interrogatory 5.

7

terminated. That will obviously also require some considerable man hours to complete.[4] However, and with respect to Interrogatory 6, AmCoal believes that it did not commence electronically recording whether an employee's resignation was in connection with a workers' compensation settlement until some time in 2006. That means that AmCoal, in response to Interrogatory 7, could identify individuals in 2007 and in the years since who resigned in connection with a workers' compensation settlement. However, those years do not conform to the years 2003 through 2007, which were the years utilized in answering Interrogatory 5.

On Friday afternoon, November 19, 2010, the undersigned conferred with plaintiff's attorney and reported to him what AmCoal believed it could do, as a compromise, in responding to Interrogatories 6 and 7 (as described above), including that it could only electronically retrieve the identity of those employees who resigned as part of a workers' compensation settlement for years different than 2003 through 2007. However, plaintiff's attorney advised that he wanted Interrogatories 6 and 7 answered exactly as those Interrogatories were written. However, in addition, and even more problematic, plaintiff's attorney then also for the first time took exception to AmCoal's response to Interrogatory 5. In other words, even if AmCoal was granted additional time to provide the information to Interrogatories 6 and 7 as described above, that information would be based upon its current response to Interrogatory 5. If AmCoal and its attorneys devoted the considerable time and work to that task, plaintiff's attorney could then

---

[4] The electronic information described here does not include the employee's address and telephone number. Since Judge Frazier's Order of November 12, 2010, the undersigned has made additional efforts to try and locate some type of list, electronic or otherwise, which would identify the employees who actually filed a compensation claim with the Commission. AmCoal uses two different law firms for the defense of its workers' compensation claims. The undersigned has learned that one of those firms is able to retrieve from computer-stored information those compensation claims it has handled from January 1, 2006 to the present time. However, that information does not contain the date the claim was filed, but rather the accident dates, and the dates the files were opened and closed by that law firm. As of this writing, the other law firm utilized by AmCoal has not been able to confirm whether they have any such information electronically stored or retrievable. Therefore, at the present time, this avenue has not been successful in putting AmCoal in a position to respond to Interrogatory 5 with just those persons who have filed claims with the Commission.

8

#44620

complain that those responses were not acceptable to him, and he could go back to the Court and complain for the first time about the adequacy of the response to Interrogatory 5, on which the information responding to Interrogatories 6 and 7 was based. That would mean that all of AmCoal's efforts in attempting to reasonably comply with Interrogatories 6 and 7 would have all been for nothing.

Obviously, all of this leaves AmCoal in a dilemma. If it proceeds to answer Interrogatories 6 and 7 in the manner described above, and while it may be a good faith effort to address those Interrogatories, the information will not precisely and completely address the Interrogatories as specifically drafted. In addition, AmCoal and its attorneys reasonably estimate that it will take 15-21 days to accomplish the task. However, if plaintiff's attorney is now, or later is going to insist on literal compliance with Interrogatory 5, and literal compliance with Interrogatories 6 and 7, based upon such literal compliance with Interrogatory 5, this would require countless man hours of manual searching of individual workers' compensation files and individual personnel files. Even if additional manpower were hired for that purpose, it is estimated that it may take 30 to 45 days to accomplish.

AmCoal and its attorneys do not wish to be in default of Judge Frazier's Order of November 12, 2010, but obviously require this Court's guidance.

## Conclusion

Frankly, AmCoal is in somewhat of a dilemma in attempting to articulate the relief it requests here, because it does not know if plaintiff will now, or later, seek to have AmCoal's objection to Interrogatory 5 overruled, and request a different response. Nevertheless, AmCoal here alternatively requests:

1. That Judge Frazier's Order of November 12, 2010 be reversed.

9

#44620

2.       That with respect to Interrogatory 6, that AmCoal be granted an additional 21 days to provide a response identifying those persons identified in response to Interrogatory 5 who are still employed, or if separated, the reason for their employment separation, to the extent that information is electronically available.

3.       With respect to Interrogatory 7, that AmCoal be granted an additional 21 days to provide, to the extent that information is electronically available, those persons, to and including up to the present time, whose separation from employment was a term of an employee's settlement of the worker' compensation claim.

Dated: November 24, 2010

Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.

By:     /s/William A. Schmitt
        William A. Schmitt, #02494655
        12 Wolf Creek Drive, Suite 100
        Swansea, IL   62226
        (618) 257-7308
        FAX (618) 257-7353

ATTORNEYS FOR DEFENDANT
THE AMERICAN COAL COMPANY

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he electronically filed the foregoing Defendant's Objection to, or Appeal from, Magistrate's Order of November 12, 2010, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

• **Stephen W. Stone**
sstone@neondsl.com

/s/William A. Schmitt

#44620